**J. Samuel WACKER, Appellant,**

**v.**

**J. G. BISSON, Consul General, Dominion of Canada, Appellee.**

**No. 21629.**

United States Court of Appeals Fifth Circuit.

June 23, 1965.

Rehearing Denied Oct. 22, 1965.

Rives, Circuit Judge, dissented.

Dean A. Andrews, Jr., New Orleans, La., for appellant.

M. Hepburn Many, New Orleans, La., for appellee.

Before RIVES and WISDOM, Circuit Judges, and MORGAN, District Judge.

WISDOM, Circuit Judge.

The appellant, J. Samuel Wacker, awaiting extradition to Canada, brings this off-beat declaratory judgment action attacking the validity of an unappealable extradition order. Since Wacker is in custody, he might just as well have cast the action in the form of an application for habeas corpus. Wacker, however, has twice tried that approach without success. In the complaint and on appeal, the plaintiff advances on all fronts, attacking the constitutionality of numerous international treaties and conventions, challenging the extradition statute (as written and as applied), and making other contentions based on all possible, and some impossible, reasons for the invalidity of the extradition. Wacker names as defendant the Consul General of Canada, the demanding state. The district court dismissed the complaint for lack of jurisdiction over the subject matter and over the person of the defendant. We reverse and remand, taking the view that the district court has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201 ff., to review collaterally the validity of the extradition proceeding.

I.

In April 1963 the Canadian Vice-Consul in New Orleans filed a complaint before the United States Commissioner for the Eastern District of Louisiana, for the extradition of J. Samuel Wacker for violations of the Canadian securities laws.[1] Wacker was arrested in New Orleans and committed to the custody of the United States Marshal without bail, pending preliminary examination. Shortly after his arrest, Wacker sought a writ of habeas corpus on the ground that the Vice-Consul was without authority to execute the complaint. The district court denied the writ, but granted bail which Wacker met. April 25, 1963, Wacker appealed from the denial of his application for a writ. This appeal was dismissed for lack of prosecution.

January 13, 1964, the United States Commissioner held a week-long hearing on the validity of the detention and the sufficiency of the evidence to justify Wacker's extradition. 18 U.S.C. § 3184. The Canadian Government intervened in the extradition hearing. The Commissioner found against Wacker, certified to the Secretary of State that the evidence was sufficient to sustain the specified charges, and committed the extraditee to the marshal's custody.

On the same day that he was committed, January 20, 1964, Wacker sought a second writ of habeas corpus on the ground that the Commissioner committed him to custody before the record was completed. He brought the second habeas corpus suit against the Dominion of Canada, although Wacker was in the custody of the United States marshal. Canada did not plead sovereign immunity. February 26, 1964, on motion of the Dominion of Canada, after a full hearing, the district court dismissed the petition for failure to state a cause of action. Wacker did not appeal.

March 9, 1964, Wacker brought the declaratory judgment suit now before the

1. In the past, Canadian courts have been reluctant to extradite Canadian residents to the United States for violations of United States securities laws. See Timbers & Pollack, "Extradition from Canada to the United States for Securities Fraud: Frustration of the National Policies of Both Countries," 16 Fed.B.J. 31 (1956); Note, 68 Harv.L.Rev. 1463 (1955). Now the situation is reversed. Ironically, as the above commentators suggest, the rigorous enforcement of the Canadian securities laws results partly from a desire to protect United States citizens against securities frauds based in Canada.

Court, naming as defendant J. G. Bisson, Consul General, Dominion of Canada. The Canadian Consul General moved to dismiss, urging lack of jurisdiction over the subject matter and pleading the immunity of a foreign sovereign or consular officer acting within the scope of his duties. The district court dismissed the petition.[2]

II.

The threshold question is whether this proceeding meets the constitutional requirement of a "case or controversy" [3] or is simply an advisory opinion.[4] A declaratory judgment is not an advisory opinion [5] and falls within the scope of the judiciary article, if the case presents "a difference or dispute * * that is 'appropriate for judicial determination,' [not] hypothetical or abstract * * * academic or moot * * * [but] definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character. * * *"[6]

A. In a habeas corpus proceeding the case or controversy is between the person held in custody and his custodian. Wacker's custodian is the United States marshal. In this declaratory judgment action to review the extradition hearing Wacker has designated as defendant only the consul general of the demanding government. This is not enough in itself to draw the proceeding beyond the boundaries of "case or controversy". The question arises in similar form in habeas corpus review of an extradition hearing when the demanding government intervenes or is joined as a defendant. In Ornelas v. Ruiz, 1896, 161 U.S. 502, 16 S.Ct. 689, 40 L.Ed. 687, only the demanding government's consul appealed a habeas corpus decision in favor of the extraditee. The Supreme Court said: "[A]s the government he represented was the *real party interested* in resisting the discharge, the appeal was properly prosecuted by him on its behalf." (Emphasis added.) 161 U.S. at 507, 16 S.Ct. at 690, 40 L.Ed. at 789. In an identical situation the Ninth Circuit held: "The British government being the real party in interest, its consul, act-

2. In its reasons for judgment, the district court stated, in part: "Now petitioner Wacker is attempting by a third effort to frustrate the extradition processes which exist between the United States of America and the Dominion of Canada. Believing, as we do, that the defendant Consul General in his representative capacity is immune to this action, as well as is the Dominon of Canada itself, we have no alternative but to dismiss this suit. Wacker has been accorded careful scrutiny of all of the proceedings brought in this jurisdiction in the two habeas corpus proceedings referred to. He should not be permitted further to frustrate the action of this Court."

3. U.S.Const. art. III, sec. 2: "The judicial Power shall extend to all *Cases*, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all *Cases* affecting Ambassadors, other public Ministers and Consuls;—to all *Cases* of admiralty and maritime Jurisdiction; —to *Con*troversies to which the United States shall be a Party;—to *Con*troversies between two or more States; —between a State and Citizens of another State;—between Citizens of different States,—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

4. Muskrat v. United States, 1911, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246; Willing v. Chicago Auditorium Ass'n, 1928, 277 U.S. 274, 48 S.Ct. 507, 72 L.Ed. 880. See Frankfurter, "A Note on Advisory Opinions", 37 Harv.L.Rev. 1002 (1924).

5. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 1937, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617. See Borchard, Declaratory Judgments 132–135 (2d ed. 1941); Hart & Wechsler, The Federal Courts and the Federal System 135–138 "Developments in the Law—Declaratory Judgments", 62 Harv.L.Rev. 787, 792–93 (1949); Comment, Threat of Enforcement—Prerequisite of a Justiciable Controversy, 62 Col. L.Rev. 106, 110, 117, 124 (1962).

6. Aetna Life Ins. Co. v. Haworth, 1937, 300 U.S. at 240–241, 57 S.Ct. at 464, 81 L.Ed. at 621.

ing for it, was a proper party to prosecute the extradition proceeding and to defend the habeas corpus proceeding, and is a proper party to prosecute this appeal." Cleugh v. Strakosch, 9 Cir. 1940, 109 F.2d 330, 332. The principle established in these habeas cases should apply to this declaratory judgment action against the demanding government, the real party in interest whether the form of action is habeas corpus or declaratory judgment. If anything, the extraditee sharpens the case or controversy by choosing an action for a declaratory judgment, for he eliminates the nominal party. The constitutional problems of case or controversy usually arise when one of the parties is *not* the real party in interest. Compare Coffman v. Breeze Corporation, 1945, 323 U.S. 316, 65 S.Ct. 298, 89 L.Ed. 264; Muskrat v. United States, 1911, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246.

B. Wacker's complaint raises a multitude of sweeping and highly dubious issues, but the scope of review of an extradition hearing should be the same whether the extraditee chooses habeas corpus or declaratory judgment.[7] The scope of review by habeas corpus is extremely limited.[8] Under existing law, such review includes only (1) whether the magistrate had jurisdiction, (2) whether the evidence showed a reasonable ground to believe the accused guilty, and (3) whether the offense was a treaty offense. Within these narrow limits, there is a case or controversy in the constitutional sense between the extraditee and the demanding government. Indeed many issues which are not within our narrow scope of review might still present a constitutional case or controversy. We do not decide whether all the issues Wacker raises fall within the limits of case or controversy. We hold only that all the issues which fall within the narrow habeas corpus scope of review meet the constitutional requirement.

C. From the early days of the Republic, constitutional lawyers have argued that the executive has the exclusive power to make the final decision to extradite.[9] In modern times the executive branch has assumed *discretion* to deny extradition in appropriate cases, a discretion seldom exercised in favor of the extraditee.[10] In this case we hold that the scope of review by declaratory judgment is the same as the scope of review by habeas corpus. Within these limits a declaratory judgment review of extradition does not conflict with the authority of the executive branch any more than habeas corpus review of extradition conflicts with the traditional authority of the executive branch.[11] Review by habeas corpus or declaratory judgment tests only the legality of the extradition proceedings; the question of the wisdom of extradition remains for the executive branch to decide.

7. The exclusion and deportation cases provide a useful analogy. The Supreme Court holds that the scope of review of exclusion and deportation cases is the same whether by habeas corpus or declaratory judgment. The new declaratory judgment remedy does not expand the scope of review by habeas corpus. Brownell v. Tom We Shung, 1956, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225. In extradition cases, and exclusion and deportation cases, the declaratory judgment is merely a substitute for habeas corpus. Since a declaratory judgment is a substitute for a coercive remedy, the use of the declaratory judgment device should not affect the scope of review.

8. Fernandez v. Phillips, 1925, 268 U.S. 311, 45 S.Ct. 541, 69 L.Ed. 970; Collins v. Miller, 1920, 252 U.S. 364, 40 S.Ct. 347, 64 L.Ed. 616; Charlton v. Kelly, 1913, 229 U.S. 447, 33 S.Ct. 945, 47 L.Ed. 1274; Terlinden v. Ames, 184 U.S. 270, 22 S.Ct. 484, 46 L.Ed. 534. These same strict limitations govern an action for declaratory judgment in an extradition case.

9. See Fong Yue v. United States, 1893, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905, relying on Chief Justice John Marshall's speeches in the Congress before he was appointed to the Court.

10. See Note, Executive Discretion in Extradition, 62 Col.L.Rev. 1313, 1315 (1962).

11. Id. at 1328–1329.

III.

We turn to the problems arising from the Federal Declaratory Judgment Act itself.

In Jiminez v. Aristeguieta, 5 Cir. 1961, 290 F.2d 106, this Court held that it had no jurisdiction of an appeal from the order of a magistrate in an extradition proceeding.[12] We do not question the reasoning or the results of that decision;[13] Jiminez v. Aristeguieta does not control the instant case. This proceeding is not an appeal from an extradition order, but a proceeding for collateral review of the legality of the extradition.

Professor Borchard writes, "There are two general types of action in which declaratory relief is invoked: (1) where the plaintiff seeks a declaration that he is privileged to act, or is immune from a liability asserted by, the defendant * * * actions in which no coercive decree is sought or even possible; and (2) where the plaintiff, though capable of suing for an executory or coercive decree, contents himself with the milder declaration of rights as adequate to his needs and purpose." Borchard, Declaratory Judgments (2d ed. 1941) at 315. Extradition proceedings may fall into either category. In some extradition cases no coercive decree is available. For example, if the extraditee is not held in custody, he cannot use habeas corpus; a declaratory judgment may be his only remedy. See McLeod v. Peterson, 3 Cir. 1960, 283 F.2d 180.

This case falls into the second category of declaratory judgment cases. Wacker cannot be denied relief on the ground that his attorney asked for a declaratory judgment instead of habeas relief; the plaintiff may ask for a declaratory judgment even if he may also seek a coercive decree.[14] The "declaratory judgment is an alternative and entirely optional remedy * * * [T]here is no justification ordinarily for the refusal of a declaratory judgment on the ground that an executory judgment was obtainable." Borchard, Declaratory Judgments (2d ed. 1941) at 316.[15] See also Ballard v. Mutual Life Ins. Co. of New York, 5 Cir. 1940, 109 F.2d 388; Allen v. American Fidelity & Casualty Co., 5 Cir. 1935, 80 F.2d 458; Carpenter v. Edmondson, 5 Cir. 1937, 92 F.2d 895. Rule 57 of the Federal Rules of Civil Procedure states that "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." See 6 Moore, Federal Practice section 5707 and chapter 57 generally. The language of the Federal Declaratory Judgment Act itself leaves no doubt that the declaratory judgment is an optional, alternative remedy. The act authorizes a declaratory judgment "whether or not further relief is or could be sought". 28 U.S.C. § 2201.

In a number of analogous situations courts permit a declaratory judgment as

12. But see Aristeguieta v. Jiminez, 5 Cir. 1960, 274 F.2d 206; First National City Bank of New York v. Aristeguieta, 2 Cir. 1960, 287 F.2d 219, vacated and dismissed as moot, 1963, 375 U.S. 49, 84 S.Ct. 144, 11 L.Ed.2d 106.

See also Note, Jiminez v. Aristeguieta, 61 Mich.L.Rev. 383 (1962). Cf. Merino v. Hocke, 9 Cir. 1961, 289 F.2d 636; Merino v. Hocke, 9 Cir. 1963, 324 F.2d 687; Merino v. United States Marshal, 9 Cir. 1964, 326 F.2d 5. In the first two Merino cases the Ninth Circuit, in dictum, states that a direct appeal lies from an extradition hearing before a United States Commissioner. In the third Merino case, which would have presented the issue squarely, the attorney for the extraditee, unlike Wacker's counsel here, sought habeas corpus rather than an appeal or a declaratory judgment.

13. But cf. Note, Jiminez v. Aristeguieta, 61 Mich.L.Rev. 383 (1962).

14. Borchard, Declaratory Judgments 316 ff (2d ed. 1941); 6 Moore, Federal Practice para. 57.07 at 3023-3024; Developments in the Law—Declaratory Judgments, 62 Harv.L.Rev. 787, 808 (1949).

15. See 2 Anderson, Declaratory Judgments sec. 541 (2d ed. 1951).

a substitute for habeas corpus.[16] Thus an alien may use a declaratory judgment rather than habeas corpus to test the legality of exclusion proceedings. Brownell v. Tom We Shung, 1956, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225. Or a declaratory judgment in lieu of habeas corpus to test the legality of a deportation order. Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed 868. See also Cruz-Sanchez v. Robinson, 9 Cir. 1956, 249 F.2d 771, 774; Brovich v. Holton, 2 Cir. 1955, 222 F.2d 840, 841. The District of Columbia Circuit has held that a person convicted of a crime may bring a declaratory judgment against his parole board instead of habeas corpus against his jailer. Hurley v. Reed, D.C.Cir.1961, 288 F.2d 844. Cf. Hom Sin v. Esperdy, S.D.N.Y.1965, 239 F.Supp. 903, (March 9, 1965) (review of immigrant preference petition).

Of course, extradition proceedings do not stand on exactly the same footing as exclusion, deportation, or parole proceedings. An administrative officer conducts the exclusion or deportation or parole hearing; a United States District Court or Commissioner conducts the extradition hearing. The cases on exclusion, deportation, and parole hearings rest partly on Section 10 of the Administrative Procedure Act;[17] the APA may not apply to extradition hearings.[18] But there is a persuasive analogy between Section 10 of the APA and the Declaratory Judgment Act. Both statutes broadly authorize declaratory judgment actions without specifying any particular types of lawsuits. If, as *Tom We Shung* and *Pedreiro* hold, Section 10 of the APA permits a declaratory judgment in lieu of habeas corpus, the Federal Declaratory Judgment Act also authorizes a declaratory judgment as a substitute for habeas corpus.

The underlying policies of the Declaratory Judgment Act support the use of declaratory judgments in extradition cases. It is a useful remedy permitting a direct confrontation between the two real parties in interest, the extraditee and the demanding government, without the triangular complications of habeas corpus. See Ornelas v. Ruiz, 1896, 161 U.S. 502, 17 S.Ct. 689, 40 L.

16. Contra, Forsythe v. State of Ohio, 6 Cir. 1964, 333 F.2d 678 (per curiam). The Ninth Circuit states no reasons and gives no authorities to support the Court's brief per curiam opinion.

17. Section 10 of the APA provides: "The form of proceeding for judicial review shall be * * * any applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction." 5 U.S.C.A. § 1009(b).

18. The legislative history of the APA suggests that it may not apply to extradition hearings. Section 10 of the Act speaks of judicial review of "agency action". Section 2 defines an "agency" as "each authority * * * of the Government of the United States other than Congress, the courts, or the governments of the possessions. * * *" The Senate Committee Print of June, 1945, states that "'agency' is defined substantially as in the * * * Federal Register Act." See Administrative Procedure Act, Legislative History, 79th Congress, 1944–1946 at 12. The Federal Register Act defines an "agency" as "the President of the United States, or any executive department, independent board, establishment, bureau, agency, institution, commission, or separate office of the administrative breach of the Government of the United States but not the legislative or judicial branches. * * *" 44 U.S.C. § 304. The Senate Committee Report also states that "The word 'agency' is defined by excluding legislative, judicial, and territorial authorities. * * *" See S. 752, 79th Cong., 1st Sess. 1945, in Administrative Procedure Act, Legislative History at 196.

This legislative history indicates that the APA excludes the entire judicial branch of the government. A United States Commissioner, therefore, an arm of the District Court, may not be an "agency" for purposes of the APA. The legislative history of the Act suggests that the word "courts" in section 2 should not be narrowly construed. In light of this legislative history, a United States Commissioner holding an extradition hearing may be a "court" for purposes of the APA even if he is not a "court" for purposes of direct appeal from the hearing. See Jimenez v. Aristeguieta, 5 Cir. 1961, 290 F.2d 106.

Ed. 787; Cleugh v. Strakosch, 9 Cir. 1940, 109 F.2d 330, 332.

If an accused who is out of custody mistakenly brings habeas corpus, the court may treat the petition as a suit for a declaratory judgment. McLeod v. Peterson, 3 Cir. 1960, 283 F.2d 180. If the accused is in custody, the Federal Declaratory Judgment Act is no bar to a declaratory judgment in an extradition case.

IV.

The court below upheld the defendant's plea of sovereign immunity. The State Department here makes no suggestion of immunity. Compare Rich v. Naviera Vacuba, 4 Cir. 1961, 295 F.2d 24. Nor is there any question of the capacity of a consul general to plead the sovereign immunity of his government in an extradition case.[19] The crucial question is whether Canada's participation in the extradition hearing and habeas proceedings constitutes a waiver of immunity.

The Dominion of Canada initiated Wacker's extradition, intervened in the extradition proceedings, appeared in both habeas proceedings, and, although designated as the defendant in the second habeas petition, did not plead sovereign immunity or protests its designation as defendant. Canada's plea of immunity comes very late in the day. Unlike a domestic sovereign, a foreign sovereign waives immunity if it appears and fails to make a timely plea. Richardson v. Fajardo Sugar Co., 1916, 241 U.S. 44, 36 S.Ct. 476, 60 L.Ed. 879; Restatement, Foreign Relations Law (Proposed Official Draft 1962) section 74(3); 2 Hackworth, Digest section 176. If the foreign sovereign waives immunity in the court of first instance, it also waives immunity to any *appeal* from an adverse judgment. Ordinarily a waiver of sovereign immunity does not extend to a separate and unrelated lawsuit. See e. g., In re Creditors of Hughes & Co., N.Y.Sup.Ct. 1957, 9 Misc.2d 16, 172 N.Y.S.2d 441. This declaratory judgment action is *not* a direct appeal from the extradition hearing or the previous habeas actions. Nor is it a completely separate and unrelated lawsuit; it is a collateral review of the extradition hearing.

We take our guidelines from the latest and most comprehensive Supreme Court discussion of waiver of immunity by a foreign state, National City Bank of New York v. Republic of China, 1955, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389. The immunity of a foreign state is judge-made law. It does not rest on the Constitution or any federal statute. As the Court pointed out: "the privileged position of a foreign state is not an explicit command of the Constitution. It rests on considerations of policy given legal sanction by this Court." Id. at 359, 75 S.Ct. at 426, 99 L.Ed. at 396. The scope of sovereign immunity has contracted in recent years. Sovereign immunity "is a legal doctrine which has not been favored by the test of time. It has increasingly been found to be in conflict with the growing subjection of governmental action to the moral judgment." Ibid. In spite of some differences, there is a basic similarity between the National City Bank case and the present case. The Republic of China sued a private citizen. The private citizen set up a counterclaim based on a separate and unrelated transaction. The Republic of China asserted sovereign im-

19. A consul is not a diplomatic officer. Normally a consul cannot assert the immunity of a sovereign state. Restatement, Foreign Relations Law sec. 74(2) (a) and Comment a. But the Canadian consul has *consular* immunity for all acts within his official capacity, including the initiation of extradition proceedings. Restatement, Foreign Relations Law sec. 85(1). In the hearing and the prior habeas suits, the nominal party was the Canadian Government, not the consul general. The consul general has acted throughout on behalf of the Canadian Government. For purposes of this opinion we see no reason to distinguish between the personal immunity of the consul and the sovereign immunity of the Dominion of Canada.

munity as to the counterclaim, but the Court held that China waived immunity by making a voluntary appearance: "The short of the matter is that * * * [w]e have a foreign government invoking our law but resisting a claim against it which fairly would curtail its recovery. It wants our law, like any other litigant, but it wants our law free from the claims of justice." Id. at 361–362, 75 S.Ct. at 427, 99 L.Ed. at 397. Broadly phrased, the *National City Bank* holds that a foreign government cannot intervene voluntarily, obtain an advantage over a private citizen, and then retire behind a shield of immunity when the private citizen attempts to restore the status quo. The case stands for the general principle that a voluntary appearance by a foreign government waives immunity as to any essentially defensive measures taken by the private citizen.

The principle applies to the present case. The National City Bank case permits a completely unrelated counterclaim against a foreign government in the same lawsuit. The instant case is in the nature of a "counterclaim" in a separate lawsuit arising out of the same transaction. We take a step, but a very small step, beyond the *National City Bank.* Like the counterclaim in the National City Bank case, this declaratory judgment action is entirely defensive. If Wacker succeeds, he will not obtain an affirmative recovery against the Dominion of Canada. He will only nullify the results of prior litigation of the Dominion of Canada. In *National City Bank* the Court permitted an unrelated counterclaim, because the private citizen had no other judicial recourse against the foreign government. Wacker here has no appeal from the extradition hearing; his only recourse is collateral review by habeas corpus or declaratory judgment.

There is no unfairness to the demanding government in an implied waiver of immunity to suit in a collateral attack on the extradition hearing. The foreign government which intervenes in an ordinary lawsuit subjects itself to an appeal. The appeal reviews all errors of law and some errors of fact. Here there is no direct appeal, and the only review is by collateral attack. The scope of review, in declaratory judgment or habeas corpus, is much narrower than the normal scope of review on an appeal. The implied waiver of immunity here is therefore much narrower than the waiver in the normal, appealable case.

Foreign cases also support our conclusion. The courts of Great Britain zealously protect the immunity of foreign sovereigns. But the British courts hold that a waiver of sovereign immunity extends to subsequent collateral review if there was no direct appeal from the original lawsuit. Sultan of Johore v. Abubakar, Judicial Committee of the Privy Council 1952, 19 International Law Reports No. 38 at 182.

We rest our holding on the fact that the demanding government was a party to the extradition hearing. If the demanding government intervenes in the extradition hearing, the demanding government waives its immunity to subsequent actions to review the validity of the hearing.

V.

Unfortunately for Wacker, he is no better off in a declaratory judgment action than in his habeas corpus proceeding; as *Tom We Shung* teaches, the scope of review is the same in both proceedings. Indeed, he may be worse off. A declaratory judgment is an equitable remedy committed to the sound discretion of the courts.[20] In Cruz-Sanchez v. Robinson, 9 Cir. 1956, 249 F.2d 771, the court held that when an alien had already * * * obtained a judicial review by habeas corpus of a deportation

20. Mechling Barge Lines v. United States, 1961, 368 U.S. 324, 331, 82 S.Ct. 337, 342, 7 L.Ed.2d 317, 332. See Public Service Commission of Utah v. Wycoff Co., 1953, 344 U.S. 237, 73 S.Ct. 236, 96 L.Ed. 291; Kerotest Mfg. v. C-O-Two Fire Equipment Co., 1952, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200; Byers v. Byers, 5 Cir. 1958, 254 F.2d 205.

order, he was not entitled to review of the same order by declaratory judgment. In Cruz-Sanchez v. Robinson the court conceded that in habeas corpus true "res judicata does not apply", but pointed out:

> "Cruz-Sanchez had a complete review in habeas corpus. The trial court there made all the essential findings required by either the Administrative Procedure Act or the Immigration Act, either in the standards of review of evidence, due process or in other fields. In the declaratory petition, Cruz-Sanchez set up nothing which had not been passed upon already. There is a further guarantee of the conclusiveness of the first judgment. No subsequent events had changed the situation, since the declaratory petition was filed the day the judgment in habeas corpus was entered. Furthermore, no excuse is alleged for failure to set up all grounds for relief in the habeas corpus proceedings. These latter matters are not necessary to support the position taken by the trial court. Mention of them is only made because of the fact that appellant has gained an inordinate amount of time by an appeal to this Court in which there is no merit." 249 F.2d at 775.

Here we have a similar situation, except that Wacker has had the benefit of *two* habeas corpus hearings. Even in federal habeas corpus proceedings brought by a state prisoner, a district court need not hold an evidentiary hearing when a state court has held a full and fair hearing on all of the issues. Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. The same principle should apply in this declaratory judgment action. If the district court should conclude that Wacker has had a full and fair hearing in the two habeas proceedings on those issues in this case which are serious, there is no necessity for holding any additional evidentiary hearing.

* * *

In short, we hold that the district court has jurisdiction to review the legality of the extradition proceeding under the Federal Declaratory Judgment Act. The case is reversed and remanded for proceedings consistent with this opinion.

RIVES, Circuit Judge (dissenting).

The district court sustained the motion of the defendant Consul General, Dominion of Canada, to dismiss for lack of jurisdiction, and succinctly stated its reasons as follows:

> "Reasons.
>
> "Plaintiff's counsel in oral argument announced that the suit against Beeson, defendant, was not in the nature of a personal action against Beeson but one against Beeson in his representative capacity as Consul General of the Dominion of Canada, this being the only way plaintiff's counsel believed he could obtain service of process against the Dominion of Canada. This Court is without jurisdiction to entertain a suit against a foreign nation or sovereign such as the Dominion of Canada or against its New Orleans Consul General as the representative of the sovereign, the Dominion of Canada. National City Bank of New York v. Republic of China, 348 U.S. 356, 75 S.Ct. 423 (1955), reh. den. 349 U.S. 913, 75 S.Ct. 598, 99 L.Ed. 389; Matthews v. Walton Rice Mill, 1949, 85 U.S.App.D.C. 197, 176 F.2d 69; United States ex rel. Cardashian v. Snyder, D.C., 1930, 44 F.2d 895, cert. den. 283 U.S. 827, 51 S.Ct. 351, 75 L.Ed. 1440. Since the Consul is being sued in his representative capacity as representative of the Dominion of Canada, the Consul enjoys the same immunity to suit. Arcaya v. Paez, S.D.N.Y., 1956, 145 F.Supp. 464, affirmed 10 Cir., 244 F.2d 958; Samad v. Etivebank, E.D. Va., 1955, 134 F.Supp. 530; Puente v. Spanish Nat. States, 2 Cir. 1940, 116 F.2d 43.

"This Court, through its chief judge, Honorable Herbert W. Christenberry, in two matters heard before him involving plaintiff and his proposed extradition by the Dominion of Canada for alleged criminal offenses which occurred in Canada, has fully considered the rights of plaintiff and has completely reviewed all of the proceedings which occurred before the United States Commissioner in extensive hearings on January 13, 14, 15, 17 and 20, 1964. The proceedings referred to were habeas corpus proceedings, and in both instances Judge Christenberry denied plaintiff's petition. See the following docket numbers of this Court: Miscellaneous Docket No. 1117, In the Matter of the Application of Joseph Samuel Wacker for a Writ of Habeas Corpus, writ denied by Judge Christenberry on April 22, 1963; and Miscellaneous Docket No. 1142, In the Matter of United States of America, ex rel. J. Samuel Wacker v. Dominion of Canada, Applying for a Writ of Habeas Corpus, writ denied by Judge Christenberry on February 26, 1964.

"Now Petitioner Wacker is attempting by a third effort to frustrate the extradition processes which exist between the United States of America and the Dominion of Canada. Believing, as we do, that the defendant Consul General in his representative capacity is immune to this action, as well as is the Dominion of Canada itself, we have no alternative but to dismiss this suit. Wacker has been accorded careful scrutiny of all the proceedings brought in this jurisdiction in the two habeas corpus proceedings referred to. He should not be permitted further to frustrate the action of this Court."

I agree with the learned district judge.

The analogy suggested by cases on exclusion and deportation hearings does not apply, because there is a real need for the remedy by declaratory judgment in exclusion and deportation cases which need does not exist in extradition orders. In Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 51, 75 S.Ct. 591, 99 L.Ed. 868, the Court referred to the inadequacy of habeas corpus for the review of deportation orders by saying that it would not be in keeping with either the Immigration Act or the Administrative Procedure Act "to require a person ordered deported to go to jail in order to obtain review by a court." Likewise, in holding that exclusion orders may be challenged either by habeas corpus or by declaratory judgment action, the Court noted in Brownell v. We Shung, 1956, 352 U.S. 180, 183, 77 S.Ct. 252, 255, 1 L.Ed.2d 225, that

> "For a habeas corpus proceeding the alien must be detained or at the least be in technical custody, as the Government puts it. On the other hand, a declaratory judgment action requires no such basis and the odium of arrest and detention is not present."

On the other hand, in criminal extradition proceedings the first writ to be issued is a "warrant for the apprehension of the person so charged." 18 U.S.C. § 3184. The petitioner in this case is confined in the Parish Prison of New Orleans, Louisiana.

The majority holds that the scope of review in a declaratory judgment action is the same as in a habeas corpus proceeding. The point of holding that the Declaratory Judgment Act has opened a backdoor to review of an extradition order escapes me when the front door provided by the Great Writ grants access to the same court of justice and provides the same scope of relief.

When there is a treaty or convention for extradition the power is vested in the executive to surrender the person to a foreign government. See Valentine v. United States ex rel. Neidecker, 1936, 299 U.S. 5, 9, 57 S.Ct. 100, 81 L.Ed. 5; Fong Yue Ting v. United States, 1893, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905; United States ex rel. Knauff v.

Shaughnessy, 1950, 338 U.S. 537, 542–543, 70 S.Ct. 309, 94 L.Ed. 317; see also, 18 U.S.C.A. § 3184; Jimenez v. Aristeguieta, 5 Cir. 1961, 290 F.2d 106.

The Great Writ provides a very limited scope of judicial review but it has not heretofore been held that the Declaratory Judgment Act provides an alternative, let alone an additional, mode of review.

It is significant that in Brownell v. We Shung, supra, the Supreme Court said that "* * * exclusion orders may be challenged *either* by habeas corpus *or* by declaratory judgment action." 352 U.S. at 184, 77 S.Ct. at 255. (Emphasis added.) It did not hold that even exclusion orders could be challenged by both habeas corpus and declaratory judgment. That is true also as to the holding of availability of declaratory judgment for the review of deportation orders in Shaughnessy v. Pedreiro, supra. There is, I submit, no indication that Congress intended successive judicial reviews of the same administrative action. I would agree with the Ninth Circuit that there is nothing in the statutes and nothing in the decisions which permits cumulative remedies by habeas corpus and declaratory petition against the same order of deportation or exclusion and *a fortiori* against the same extradition order. See Arellano-Flores v. Rosenberg, 9 Cir. 1962, 310 F.2d 118; Cruz-Sanchez v. Robinson, 9 Cir. 1957, 249 F.2d 771; Sigurdson v. Del Guercio, S.D.Calif., 1957, 154 F.Supp. 220.

It is important that the treaty obligations of the United States be honored without unnecessary delay, and this case well illustrates how permitting review by declaratory judgment in addition to habeas corpus may result in unreasonable, if not interminable delay, not consistent with the prompt performance of our treaty obligations.

I would affirm the judgment of the district court, and therefore respectfully dissent.