Petition of Josette GEISSER, Divorced Bauer, a/k/a Paulette Louise Fallai

Josette Claire BAUER, nee Geisser, a/k/a Paulette Louise Fallai,

v.

UNITED STATES of America

Alfred Keller, Consul General of the Government of Switzerland, Applicant for Intervention.

Nos. 73–772–Civ–EM, 73–773–Civ–WM.

United States District Court, S. D. Florida, Miami Division.

May 21, 1976.

Marchiondo & Berry, P. A., Albuquerque, N. M., William John Mason, Miami, Fla., for plaintiff.

Robert W. Rust, U. S. Atty., Samuel A. Alter, Asst. U. S. Atty., Miami, Fla., Shirley Baccus-Lobel, Atty., Dept. of Justice, Washington, D. C., Murray R. Stein, Government Regulations Section, Crim. Div., Dept. of Justice, Washington, D. C., for defendant.

Talbot D'Alemberte, Steel, Hector & Davis, Miami, Fla., Local Counsel, Brooksley E. Landau, Arnold & Porter, Washington, D. C., for Govt. of Switzerland.

## OPINION

MEHRTENS, District Judge.

The United States Government has moved, after remand of this matter by the Fifth Circuit Court of Appeals,[1] to dismiss the petition for habeas corpus filed by Josette Bauer in this Court. The Court of Appeals vacated an earlier order which granted the petition, and directed that further proceedings be had to receive evidence of "just exactly what the Secretary of State proposes to do" (513 F.2d 862, at 870) in light of the Government's "confessed failure to keep the faith" (id.) in respect of promises made to the petitioner by the Department of Justice to prevent petitioner's extradition to Switzerland.[2]

At the subsequent hearing, the Government introduced evidence that on October 9, 1975 more than four months after the appellate decision was rendered,[3] the Department of Justice for the first time exerted any efforts[4] to bring to the attention of the Department of State its commitment to Mrs. Bauer. The Fifth Circuit correctly observed that there previously had been an outright failure by the Government to comply with either the limited "best efforts," contended for by the Government, or with the absolute promise found by this Court to prevent her return to Switzerland. It suggested that, at a minimum, the Department of Justice should have made "a strong presentation to the Department of State as to what had been promised *and* the likely dangers to the bargainee-defendant-witness." (513 F.2d at 869). I cannot help but note that the Department of Justice, in its belated 1975 communications with the Department of State, never once mentioned petitioner's well-founded fears for her life should extradition be effected as a matter of a primary concern to both the United States and Switzerland. Perhaps the State Department might have been more persuasive in obtaining agreement from the Swiss Embassy if this aspect of the bargain had been as forcefully presented by Justice as was Justice's concern for the "difficulties

1. *Geisser v. United States,* 513 F.2d 862 (5th Circuit 1975).

2. The Opinion of the Court of Appeals recites, at 513 F.2d 864, that petitioner was "as a practical matter, protected against deportation to Switzerland" in exchange for invaluable information concerning an international narcotic conspiracy; thus, apparently, agreeing with the finding made by this Court in August, 1973 that she would not be deported following her release from a plea-bargaining conviction.

3. On the other hand, counsel for petitioner presented to the Court in January 1976, a letter sent by him in July 1975 to the Secretary of State, three months before the Government acted, in which the Secretary was requested to advise the Court of its intentions concerning the promises made by officials of the Justice Department. A copy of said letter was sent to the Department of Justice. Neither the State Department, the Department of Justice, nor any other agency of the United States Government has ever responded to the letter from plaintiff's counsel.

4. The Government does not deny that as early as 1967 it had commenced negotiations for Josette Bauer's cooperation, promising to use, at least, its "best efforts" to prevent her return to Switzerland. In fact, no effort whatsoever was made until October 1975.

for the Department of Justice in its relationship with the judiciary."[5]

In any event, it now appears that Switzerland declines to withdraw its request for petitioner's extradition, and the Department of State declines to withhold extradition under any claim of discretionary authority to do so, or to pursue other avenues in her behalf which were suggested by the Appellate Court.[6] In this posture, and following the dictates of the appellate decision rendered in this matter, it becomes necessary for me to determine exactly what effect the dilatory efforts of the Government to fulfill its promises (and the unsuccessful conclusions, insofar as Bauer's future is concerned, of those efforts), shall have upon what this Court considers the overriding issue in this entire matter: What is to be done to protect Josette Bauer's *Santobello*[7] rights, in view of the disparate positions[8] taken by the co-equal Departments of Justice and State regarding her extraditability? The Court of Appeals most aptly, and with justifiable wryness, remarked upon the conspicuous impossibility of petitioner's redress for the Government's breach of faith if specific performance of its promises were not to be ordered. This Court fully agrees with that assessment of the dilemma.

The United States Government failed in both of its promises: It did nothing, for eight years, to protect petitioner from being turned over to Swiss authorities; further, it presented no evidence, at any time during any of the proceedings in this matter—and contrary to the directions of the Court of Appeals[9]—concerning any efforts to obtain from the Board of Paroles a determination of what would be done to respect the Government's promise that petitioner would not serve more than three years in prison. Petitioner has thus been doubly dishonored: by Government inaction, and by a woeful lack of integrity on the part of government officers either to acknowledge its obligations or to obey the mandate of the Court.

The language of *Santobello* quoted by the appellate court in its opinion,[10] i. e.,

"This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled,"

do its best to influence the actions of the independent sister branches of the Government—the State Department and the departmental subordinate, the Board—and having convinced Josette Bauer that it would in all likelihood be successful, claims to find itself with contradictory commitment—to Josette Bauer and the Swiss Government."

5. Letter from Deputy Attorney General to the Secretary of State, October 9, 1975, attached to Government's Motion to Dismiss Petition.

6. It appeared to the Fifth Circuit Court of Appeals that *Ashwander v. T. V. A.,* 297 U.S. 288, 345–48, 56 S.Ct. 466, 482–483, 80 L.Ed. 688, 709–711 (1936); *Wacker v. Bisson,* 348 F.2d 602 (5th Circuit, 1965); and *Texas v. Grundstrom,* 404 F.2d 644 (5th Circuit 1969), and several worthy commentators recognize such discretion; but, moreover, that the safeguard of asylum was another key to the solution that might be employed. See Court's footnote 22 at 513 F.2d 870.

7. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

8. The Court of Appeals stated it thusly: "As we pointed out in the prologue, at the core of each of these arguments [that the petition was premature and procedurally defective as well], is the essential fact that the Government occupies a schizophrenic position. The Department of Justice, having made a bargain that it would

9. ". . . [R]emand offers an ample opportunity for the judiciary to be informed of exactly (i) what would have taken place by the Board had the Department of Justice kept its word, and (ii) what would now take place if, on a full disclosure of the positive commitment and the consequent violation of Bauer's constitutional rights, the matter would be resubmitted to the Board. Both the Board and its hierarchical superiors are to respond authoritatively on this."

10. *Geisser v. United States,* 513 F.2d 862, 871 (5th Circuit 1975).

compels, I think the result originally reached in this matter.

The Government takes the position that because it has now exerted its "best efforts" to carry out its part of the bargain—albeit long past any reasonable time for recognizing that obligation to do so; and only because required to do so by judicial mandate; and, without any effort to comply with the other half of the bargain (parole by the Board)—it can ignore the constitutional question involved and insist that the terms of an international extradition treaty be the sole determining factor.

Initially, as has been pointed out above, the Court does not agree that the Government has, indeed, used its best efforts to forestall petitioner's extradition. Its "best efforts," to be charitable, have been too little, and too late.

It is not without regret for the impact which this decision may have upon our Government's diplomatic relations with a foreign government that I find against the Government in this matter. But simply because departments of the Executive Branch decline to bear an onus which may attach to their obligations of defending rights granted by our Federal Constitution, such acquiescence to diplomacy or legalistic formality cannot justify the Judiciary's following a similar course. The sanctity of the Constitution, and the protections it guarantees, are the foremost considerations here. The "constitutional obligations owing Bauer" recognized by the Fifth Circuit [11] must take precedence over any treaty obligations to a foreign nation. If, as the Opinion of the Fifth Circuit intimates, this result causes Switzerland to feel aggrieved, "its avenues of redress would more likely be through diplomatic means or in international tribunals." [12]

The Government's motion to dismiss the habeas corpus petition is denied. Consequently, petitioner's application for release is granted. It is ordered that the extradition order entered in Cause No. 67–10 be vacated, stricken and held for naught, and that petitioner be released forthwith from any form of detention arising from that proceeding, from her conviction for escape, or from these consolidated proceedings.