**Thomas James MARTIN**

v.

**WARDEN, ATLANTA PENITENTIARY, et al.**

**Civ. No. 1:92–cv–1762–WCO.**

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 16, 1992.

Richard M. Langway, Office of U.S. Atty., Atlanta, Ga., for Government of Canada and Warden.

W. Bruce Maloy, Maloy & Jenkins, Atlanta, Ga., for Thomas James Martin.

### ORDER

O'KELLEY, Chief Judge.

The captioned case is before the court on petitioner Thomas Martin's motion for expedited review of his amended petition for writ of habeas corpus [9–1, 8–1]. The peti-

tioner has also requested that the court issue an order staying any transfer to the Canadian authorities while litigation is pending in this case [10–1]. Oral argument was held in this case on Friday, September 4, 1992. After careful review, the court dismisses Martin's amended petition for a writ of habeas corpus for the reasons stated herein.

## GENERAL FACTUAL BACKGROUND

In December of 1974, Thomas James Martin, an American citizen, was living in Ontario, Canada, as a result of his decision to avoid the draft during the Vietnam War. At 6:40 p.m. on December 13, 1974, it is alleged that Martin drove his car, a small Triumph convertible, into an intersection on a green light. As he did so, three small children allegedly ran into the intersection in front of his car against the red light. One of them, seven-year-old Joseph Bellenie, allegedly was struck by Martin's car and was trapped under the vehicle. Martin stopped his car and got out to look around. The magistrate judge found that Martin negligently failed to discover that the boy was caught under his car even though three eyewitnesses were shouting such information to him. Martin contends that he heard nothing of the kind. Martin then allegedly looked around his car and, seeing nothing but crushed groceries, got back in his car and drove away, without giving his name or address or offering assistance. The boy, still trapped under the car, allegedly was dragged along for approximately 600 feet. He then became dislodged from Martin's car and fell into the street. As Martin continued to drive away, the boy was hit by another car. He ultimately died from these injuries.

Martin contends that he went home and saw on the news that a fatal hit-and-run accident had occurred at that intersection, involving a car whose description matched that of his car. He called his attorneys in the United States and Canada, who advised him to return to the United States immediately. Martin contends that this advice was based on the fact that he had already received a prescheduled reporting date for an amnesty program for draft resisters, and that if he remained in Canada to face charges for the accident, he would miss the deadline and not be eligible for amnesty. Accordingly, it is alleged that he returned to work in Canada on Monday, December 16, driving a different car from the one involved in the accident, and on December 17, he and his family left Canada on a flight which he allegedly had booked on the previous night. They resumed residence in the United States, and Martin has never returned to Canada.

A warrant was issued for Martin's arrest in Canada on December 19, 1974, on the charges of (1) unlawfully causing the death of Joseph Bellenie by criminal negligence, in violation of then section 203 of the Canadian Criminal Code; [1] and (2) failing to stop his vehicle and give his name and address and offer assistance after being involved in a motor vehicle accident, in violation of then section 233–2a of the Canadian Criminal Code.[2]

Article 2 of the Extradition Treaty between the United States of America and Canada of December 3, 1971, which entered into force on March 22, 1976 (TIAS 8237) (the "Extradition Treaty"), allowed persons to be extradited for any of the offenses listed in an attached schedule. That schedule specifically listed murder, assault with intent to commit murder, manslaughter,

1. Canadian Criminal Code section 203 provided, "Everyone who by criminal negligence causes the death of another is guilty of an indictable offence...." Criminal negligence is defined as follows: "(1) Everyone is criminally negligent who (a) in doing anything, or (b) in omitting to do anything that is his duty to do, shows wanton or reckless disregard for the lives or safety of other persons. (2) For the purposes of this section, 'duty' means a duty imposed by law."

In this case, the duty in question is the duty to stop and render assistance.

2. Under Canadian Criminal Code section 233(2)(a), "Everyone who, having the care, charge or control of a vehicle which is involved in an accident with a person ... with intent to escape civil or criminal liability fails to stop his vehicle, give his name and address, and, where any person has been injured, offer assistance, is guilty of an indictable offence...."

and wounding, maiming, or assault occasioning bodily harm, but not criminal negligence resulting in death or failure to remain at the scene of an accident. The Protocol Amending the Extradition Treaty with Canada of January 11, 1988, which entered into force on November 26, 1991, deleted the Schedule attached to the Extradition Treaty, and instead allows extradition to be granted for conduct which constitutes an offense punishable under the laws of both countries by imprisonment exceeding one year. Criminal negligence causing death can carry a sentence of up to life imprisonment. Article VIII of the Protocol states that it applies to all cases where the request for extradition is made after the date of entry into force of the 1988 Protocol, regardless of whether the offense was committed before or after that date.

## PROCEDURAL BACKGROUND

On June 23, 1992, the Canadian Embassy submitted a diplomatic note, Note No. 111, formally requesting Martin's extradition. On June 30, 1992, the magistrate judge issued a warrant for Martin's apprehension pursuant to 18 U.S.C. § 3184, based upon a complaint made under oath by the Assistant United States Attorney on behalf of Canada. Martin was arrested on July 8, 1992, in the Eastern District of Louisiana.

 Martin was transferred in custody to the Northern District of Georgia, and on July 10, 1992, a bond hearing was held in Atlanta before Magistrate Judge Feldman; Judge Feldman ordered on July 15, 1992, that Martin be detained without bond. *In the Matter of the Extradition of Thomas James Martin*, Magistrate Case No. 1:92–M–747 (N.D.Ga.). Martin filed a petition for a writ of habeas corpus in the captioned case, seeking review of the magistrate judge's denial of release on bond pending determination of his extraditability. On August 11, 1992, Judge Feldman held a hearing pursuant to 18 U.S.C. § 3184 to determine Martin's extraditability. On Au-

gust 24, 1992, Martin was certified to be extraditable; Martin amended his habeas corpus petition to seek review of that decision. This court has already adopted the magistrate judge's report and recommendation that the original habeas corpus petition be dismissed; the court now considers Martin's amended petition for review of the magistrate judge's order of extradition.[3]

## ANALYSIS

 "The scope of habeas corpus review of a magistrate's order of extradition is quite narrow. It is limited to a determination of 'whether the magistrate had jurisdiction, whether the offense charged is within the treaty and ... whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.'" *Hill v. United States*, 737 F.2d 950, 951 n. 1 (11th Cir. 1984) (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925)). The habeas petition is not a writ of error or a means of rehearing what the magistrate judge has already heard and decided. *Fernandez*, 268 U.S. at 312, 45 S.Ct. at 542; *Garcia–Guillern v. United States*, 450 F.2d 1189, 1193 n. 1 (5th Cir. 1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972). Rather, habeas review "tests only the legality of the extradition proceedings; the question of the wisdom of extradition remains for the Executive Branch to decide." *Wacker v. Bisson*, 348 F.2d 602, 606 (5th Cir.1965).

 In this case, Martin raises two main objections to the magistrate judge's order. First, he contends that there is no probable cause to believe that he is guilty of the offense charged; second, he contends that Canada's effort to extradite him after a delay of over 17 years violates his due process right to a speedy trial under the fifth and sixth amendments to the United States Constitution.

---

**3.** Because a magistrate judge's order of extradition cannot be directly appealed, an extraditee's sole remedy from an adverse decision granting the government's request to certify the extraditee as a fugitive from a foreign country is to seek a writ of habeas corpus under 28 U.S.C. § 2241. *Hill v. United States*, 737 F.2d 950 (11th Cir.1984); *Ahmad v. Wigen*, 910 F.2d 1063 (2d Cir.1990).

## A. *Probable Cause*

In reviewing the existence of probable cause to sustain the charges against petitioner "or, in other words, the existence of a reasonable ground to believe the accused guilty," our function "is to determine whether there is *any* competent evidence tending to show probable cause. The weight and sufficiency of that evidence is for the determination of the committing court."

*Escobedo v. United States,* 623 F.2d 1098, 1102 (5th Cir.), *cert. denied,* 449 U.S. 1036, 101 S.Ct. 612, 66 L.Ed.2d 497 (1980) (quoting *Garcia–Guillern,* 450 F.2d at 1192) (emphasis added). It is not incumbent upon the requesting country to present sufficient evidence in the extradition proceeding to establish the extraditee's guilt beyond a reasonable doubt; it is a "well-entrenched rule" that "extradition procedures are not to be converted into a dress rehearsal trial." *Jhirad v. Ferrandina,* 536 F.2d 478, 484 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976); *see also Charlton v. Kelly,* 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913).

In considering what evidence is sufficient to constitute probable cause in the context of an extradition hearing, "it has been stated that evidence which 'tends to obliterate probable cause may be considered but not merely [that which] contradicts it.'" *Freedman v. United States,* 437 F.Supp. 1252, 1266 (N.D.Ga.1977) (Freeman, J.) (quoting *Shapiro v. Ferrandina,* 355 F.Supp. 563, 572 (S.D.N.Y.1973), *modified,* 478 F.2d 894 (2d Cir.1973)).

Moreover, the question of reliability may come into focus since "the improbability or vagueness of testimony may destroy the probability of guilt"; however, the mere presentation of witnesses who testify as to an opposite version of facts will not. The resolution of such conflicts in evidence must await a trial on the merits.

*Id.* (citation omitted). *See also Cheng Na–Yuet v. Hueston,* 734 F.Supp. 988, 995 (S.D.Fla.1990) ("... the extraditee cannot avoid extradition simply by contradicting the requesting country's case. Rather, the extraditee must 'negate' or 'obliterate' the requesting country's showing of probable cause."), *aff'd without op.,* 932 F.2d 977 (11th Cir.1991).

In support of its request for extradition, the government on behalf of Canada presented statements by eyewitnesses to the incident reflecting the basic facts as described above. The government also introduced, without objection by Martin, a videotape of a television interview given by Martin within two months of the incident, confirming many aspects of the facts as related by the eyewitnesses. Martin's contention that he heard no one shouting to him that the boy was trapped under his car does not "obliterate" the government's evidence of probable cause, but instead merely contradicts it. These opposing views of the facts do not negate the government's showing of probable cause, but rather present issues more appropriately reserved for resolution at trial.

█ The court therefore holds that the magistrate judge's finding that that there was competent evidence to show probable cause to believe that Martin was guilty of the offenses charged was not clearly erroneous in view of all the evidence presented to the magistrate judge at the extradition hearing.

## B. *Constitutional Issues*

The law in this and other circuits is that a court on reviewing an order of extradition on habeas is limited to determining "'whether the magistrate had jurisdiction, whether the offense charged is within the treaty and ... whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.'" *Hill v. United States,* 737 F.2d 950, 951 n. 1 (11th Cir.1984). Martin, however, contends that he is being held in violation of his constitutional right of due process under the United States Constitution.

█ Specifically, Martin points to Article 8 of the Extradition Treaty, which states, "The determination that extradition should or should not be granted shall be made in accordance with the law of the requested State and the person whose ex-

tradition is sought shall have the right to use all remedies and recourses provided by law." Martin contends that this provision in the treaty means that he is entitled to the protection of the sixth amendment to the United States Constitution, which guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." Because treaties entered into by the United States must comply with the United States Constitution, Martin argues that the United States cannot exercise power over him pursuant to a treaty when to do so would violate his constitutionally protected rights. Martin concludes that because of the substantial lapse of time between the 1974 incident and the 1992 request for his extradition,[4] the extradition proceeding should be dismissed because it violates his sixth amendment right to a speedy trial.

The court notes first of all that the sixth amendment by its terms applies only to "criminal prosecutions," and that an extradition proceeding is not a criminal prosecution. *McDonald v. Burrows,* 731 F.2d 294, 297 (5th Cir.), *cert. denied,* 469 U.S. 852, 105 S.Ct. 173, 83 L.Ed.2d 108 (1984); *Caltagirone v. Grant,* 629 F.2d 739, 748 n. 19 (2d Cir.1980); *Sabatier v. Dabrowski,* 586 F.2d 866, 869 (1st Cir.1978). As a result, the guarantees of the sixth amendment do not apply to international extradition proceedings. *Jhirad v. Ferrandina,* 536 F.2d 478 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 *reh'g denied,* 429 U.S. 988, 97 S.Ct. 511, 50 L.Ed.2d 600 (1976).

Furthermore, it is a long-accepted rule that the rights, privileges, and immunities which the United States Constitution guarantees to individuals charged with a crime against the United States do not extend to crimes committed outside the jurisdiction of the United States against the laws of a foreign country. *Neely v. Henkel,* 180 U.S.

109, 122, 21 S.Ct. 302, 307, 45 L.Ed. 448 (1901).

> [W]e are reminded of the fact that the [petitioner] is a citizen of the United States. But such citizenship does not give him an immunity to commit crime in other countries, nor entitle him to demand, of right, a trial in any other mode than that allowed to its own people by the country whose laws he violated and from whose justice he has fled.

*Id.* at 122–23, 21 S.Ct. at 307. The court has some difficulty with the petitioner's apparent contention that in this case the government of Canada is somehow bound by the Constitution of the United States. The provisions of the United States Constitution simply do not have any bearing on the prosecution by Canada of an individual charged under the laws of Canada with a crime committed in Canada against a citizen of Canada. *Holmes v. Laird,* 459 F.2d 1211, 1217–18 (D.C.Cir.), *cert. denied,* 409 U.S. 869, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972).

> In connection with the not-insubstantial lapse of time between the alleged commission of the offenses charged and the date on which these proceedings were commenced, petitioner has further argued that the proceedings should be dismissed because of the denial of the right to a speedy prosecution and trial guaranteed by the Fifth and Sixth Amendments to the United States Constitution. It is well established that the fact that a foreign judicial system does not provide identical criminal safeguards as those enjoyed in this country is not controlling on the question of extradition. Thus, the Sixth Amendment's guarantee of a speedy trial is not an appropriate consideration in the instant extradition proceeding.

---

**4.** Martin contends that Canada could have extradited him for this offense at any time, because: (1) "homicide" is committed when a person directly or indirectly by any means causes the death of a human being, (2) homicide may be culpable or not culpable, (3) "culpable homicide" is murder, infanticide, or manslaughter, and (4) "culpable homicide" is committed when a person causes the death of a human being by criminal negligence. Because Martin has been charged with "criminal negligence causing death," he asserts that this offense fell under the enumerated offenses in the schedule attached to the Extradition Treaty, and that therefore he could have been extradited at any time.

*Freedman v. United States,* 437 F.Supp. 1252, 1264 (N.D.Ga.1977) (Freeman, J.) (citations omitted).[5]

The court also notes in passing that Canada has its own constitutional protections; that they are not necessarily identical to the protections Martin could be afforded in a prosecution in this country may be unfortunate for him, but it is not grounds to dismiss an extradition proceeding. "It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." *Jhirad v. Ferrandina,* 536 F.2d at 484–85. This court's role on a habeas review of an order of extradition is a narrow one; the ultimate decision to extradite or not to extradite rests with the Secretary of State, to whom the petitioner's constitutional arguments may be more appropriately addressed. *Escobedo,* 623 F.2d at 1105. *See also Wacker,* 348 F.2d at 606 ("Review by habeas corpus tests only the legality of the extradition proceedings; the question of the wisdom of the extradition remains for the executive branch to decide.").

## CONCLUSION

Accordingly, after granting the petitioner's motion for expedited review of his amended petition [9–1], the court finds that the magistrate judge's finding that probable cause existed to believe that the petitioner is guilty of the charged offense is not clearly erroneous in light of the evidence presented. Since the petitioner's constitutional arguments are not appropriately considered in this habeas proceeding, and since no other aspects of the magistrate's order of extradition were challenged, the petitioner's amended petition for a writ of habeas corpus [8–1] is dismissed. The petitioner's motion to stay [10–1] any transfer to the Canadian authorities pending the conclusion of all litigation in this case is granted.

After careful consideration, the court also denies the petitioner's request to be released on bond pending his appeal of this decision. This request has been raised and denied repeatedly since the petitioner was apprehended in July of 1992; the court notes that the petitioner has faced the possibility of criminal prosecution twice in his lifetime, and both times he has fled the country to avoid prosecution. The court is of the opinion that it would not be in the best interest of justice to allow history the opportunity to repeat itself yet a third time.

IT IS SO ORDERED.

---

5. In oral argument in this case, the petitioner directed the court's attention to the Supreme Court's recent ruling in *Doggett v. United States,* — U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), which reversed the Eleventh Circuit's ruling in *United States v. Doggett,* 906 F.2d 573 (11th Cir.1990). After review, the court finds that *Doggett* is inapposite to the captioned case. First, *Doggett* involves the United States government's negligent failure to prosecute an individual living in the United States for a crime committed in the United States—a situation in which sixth amendment considerations would definitely apply. Second, *Doggett* is not an extradition proceeding, but a criminal prosecution. Finally, the Supreme Court specifically noted that there was no evidence to indicate that Doggett had been aware of the indictment prior to his arrest; had he known of his indictment, the Court stated, that fact would have weighed "heavily" against him.

Here, Martin, on the advice of his attorneys, fled Canada only a few days after the fatal collision, with the express intent to avoid prosecution, and even succeeded in convincing the United States Department of Justice that he was not extraditable so that he could continue in the draft resisters amnesty program. In light of the fact that Martin has chosen to remain a fugitive from Canada for almost eighteen years, his current argument that he has been denied his right to a speedy trial in Canada is disingenuous at best.