426 F.2d 1379
 LIBERATION NEWS SERVICE, Sheila Ryan, Allen Young, Students for a Democratic Society, Anita Simpson and Richard Marantz, Plaintiffs-Appellants,
v.
James O. EASTLAND, John J. McClellan, Sam Ervin, Birch Bayh, Thomas J. Dodd, Robert C. Byrd, Strom Thurmond, Marlow W. Cook, Robert P. Griffin, Hugh Scott, J. G. Sourwine, as Chairman, members and staff counsel of the Subcommittee on Internal Security of the Committee of the Judiciary of the United States Senate, Defendants-Appellees, and
Chemical Bank New York Trust Company, Defendant.
 No. 776.
 Docket 34688.
 United States Court of Appeals, Second Circuit.
 Argued April 10, 1970.
 Decided May 7, 1970.
 
 COPYRIGHT MATERIAL OMITTED Edward Carl Broege, Jr., New York City (Lefcourt, Garfinkle, Crain, Cohn, Sandler & Lefcourt and Nancy Stearns, New York City, of counsel), for plaintiffs-appellants Liberation News Service, Sheila Ryan and Allen Young, and (Lubell, Lubell, Fine & Schaap, New York City, and Frederick H. Cohn and William H. Schaap, New York City of counsel), for plaintiffs-appellants Students for a Democratic Society, Anita Simpson and Richard Marantz.
 Peter Alan Herbert, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, and Michael Hess, Asst. U. S. Atty., of counsel), for defendants-appellees other than Defendant Chemical Bank New York Trust Co.
 Before WATERMAN, FRIENDLY and ANDERSON, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 The plaintiffs in this action in the District Court for the Southern District of New York are Liberation News Service [LNS], an association which describes itself as "a wire service to the radical and underground press," the New York Regional Office of Students for a Democratic Society [SDS], "an association of young people of the left," and four officers of the two associations, all residents of New York. Defendants are ten United States Senators, who are Chairman and members of the Subcommittee on Internal Security of the Senate Committee on the Judiciary, none citizens of New York, J. G. Sourwine, a citizen of the District of Columbia, who is the Subcommittee's Chief Counsel, and Chemical Bank New York Trust Company [Chemical], a New York banking association. The complaint alleged that the Subcommittee had served subpoenas, signed by Senator Eastland, requiring Chemical to produce at the Subcommittee's room in Washington "any and all records" of the accounts of LNS and SDS, such records to "comprehend papers, correspondence, statements, checks, deposit slips and supporting documentation, or microfilm thereof within your control or custody or within your means to produce." The subpoenas rested on the authority of Senate Resolution 366 approved in 1950 by the 81st Congress, 2d Session, as extended by Senate Resolution 46 of the present Congress, adopted February 17, 1969. Plaintiffs allege that the Resolutions violate numerous provisions of the Constitution, notably the First Amendment, the due process clause of the Fifth Amendment and the prohibition of Bills of Attainder, Art. I, § 9, Clause 3, and that the subpoenas violate the First, Fourth, Fifth, Ninth and Tenth Amendments. They allege further that about half of LNS' financial support and all of SDS' comes from private contributions, much of which will be withdrawn if Chemical complies with the subpoenas.
 
 
 2
 Proceeding by order to show cause,[1] plaintiffs obtained a temporary restraining order and moved for a preliminary injunction. Appearing for the Senators and Mr. Sourwine, the United States Attorney cross-moved to dismiss the complaint as to them for lack of jurisdiction over their persons. Judge McLean in an opinion denied plaintiffs' motion and granted the United States Attorney's[2] but continued the temporary restraining order until the entry of an order so that plaintiffs might bring an action for similar relief in the District of Columbia if so advised. We have maintained the temporary restraining order during the pendency of this expedited appeal.
 
 
 3
 We noted at the argument that since there was some dispute whether the action remained pending against Chemical[3] and the district judge had not made an order pursuant to F.R.Civ.P. 54(b), we might not be able to entertain the appeal as one from a final decision under 28 U.S.C. § 1291 and, if not, appellate jurisdiction would have to rest on the denial of plaintiffs' request for an injunction, 28 U.S.C. § 1292(a) (1). While we have no doubt concerning the correctness of Professor Moore's view that an order denying an injunction is appealable despite the presence of other unadjudicated claims, 6 Federal Practice ¶ 54.30[2] (1966), and cases cited, we were not entirely sure that this principle extended to a case where the denial of an injunction was a consequence of dismissal for want of jurisdiction over the person of the defendants. At our suggestion appellants eliminated the problem by obtaining a certification under Rule 54(b) and filing a new notice of appeal solely from the judgment against the governmental defendants.
 
 
 4
 The basis asserted for maintaining the action in the Southern District of New York is 28 U.S.C. § 1391(e), added by Pub.L.No. 87-748, 76 Stat. 744 (1962):
 
 
 5
 A civil action in which each defendant is an officer, or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.
 
 
 6
 The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.
 
 
 7
 If the section were applicable, it would indeed supply both venue, since plaintiffs reside within the district,[4] and jurisdiction over the persons of the Senators and their counsel.[5] However, we agree with the district court that it is not.
 
 
 8
 A number of provisions of the Constitution could be cited as indicating that members of Congress are not "officers." See Art. I, § 6; Art. II, § 2; Art. II, § 4. It is clear that, for the purposes of Title 5 of the U. S. Code, a member of Congress is not an "officer," 5 U.S.C. § 2104, although their staffs are "employees of the United States," 5 U.S.C. § 2105. On the other hand, a member of Congress has been held to be an officer of the United States within the statute, 18 U.S.C. § 912, making it a crime to impersonate such an officer, Lamar v. United States, 241 U.S. 103, 36 S.Ct. 535, 60 L.Ed. 912 (1916).
 
 
 9
 We do not find that any of this gives substantial aid on whether § 1391(e) applies to Congressmen and employees of Congress. The words of a statute, in Mr. Justice Frankfurter's phrase, "acquire scope and function from the history of events which they summarize," Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 186, 61 S.Ct. 845, 85 L.Ed. 1271 (1941). And "the starting point for determining legislative purpose is plainly an appreciation of the `mischief' that Congress was seeking to alleviate." Interstate Commerce Comm. v. J-T Transport Co., 368 U.S. 81, 107, 82 S.Ct. 216, 223, 7 L.Ed.2d 147 (1961) (dissenting opinion).
 
 
 10
 The "mischief" that gave rise to § 1391(e)[6] was a venerable Supreme Court decision that the lower federal courts generally lacked jurisdiction to mandamus federal officers, M'Intire v. Wood, 11 U.S. (7 Cranch) 504, 3 L.Ed. 420 (1813). Later the Court went some way to filling the gap by holding that the circuit court of the District of Columbia, as inheritor of the common law powers of the courts of Maryland, did have such jurisdiction, Kendall v. United States ex rel. Stokes, 37 U.S. (12 Pet.) 524, 9 L.Ed. 1181 (1838). Attempts to circumvent the former ruling by labelling the suit as one for an injunction often foundered, sometimes upon the transparency of the label, at other times upon the principle requiring joinder of a superior officer, usually residing in Washington, over whom the local district court lacked both venue and process. The problem was particularly acute with respect to land disputes in Western states where the Government is a large landowner.
 
 
 11
 To meet these difficulties Representative Budge of Idaho introduced a bill, H.R. 10892, 85th Cong. 2d Sess. (1958), providing that civil actions against an officer of the United States "in his official capacity" could be brought in the district where the plaintiff resided and that process could be served on the local United States attorney or his designee. When the bill was reintroduced, H.R. 10089, 86th Cong. 2d Sess. (1960), the Department of Justice opposed it upon the ground, among others, that the bill "would [not] serve any useful purpose," since the only type of action that could be brought against an officer "in his official capacity" would be the equivalent of a writ of mandamus which could be obtained only in the District of Columbia.[7] Since this objection went to the jugular, a new version of the bill, H.R. 12622, 86th Cong. 2d Sess. (1960), met it with a provision giving the district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty, owed to the plaintiff," the source of what was ultimately to be 28 U.S.C. § 1361. This jurisdictional change, rather than the venue and process provision, then became the main subject of Congressional and executive concern.
 
 
 12
 Without going into further detail, it suffices to note the Report of the Senate Committee on the Judiciary recommending passage of the House bill as amended. This states that the intention was "to facilitate review by the Federal courts of administrative actions."[8] Facilitation was to be accomplished in two ways — abrogating the hundred-and-fifty year old denial of mandamus power to district courts other than that for the District of Columbia, and broadening the provisions on venue and service of process so that when a superior officer residing in Washington was a necessary party the action could still be brought in the field, with personal jurisdiction over the superior obtainable by service of process by mail, accompanied by service on the local United States Attorney or his designee and sending a copy to the Attorney General.
 
 
 13
 This history demonstrates to us that, in enacting §§ 1361 and 1391(e), Congress was thinking solely in terms of the executive branch, to which alone § 1391(e) has thus far been judicially applied. The officers and employees of the United States who were made reachable by § 1391(e) were the same types of officers or employees who could be compelled to perform a duty owed to the plaintiff under § 1361. Congress could well have had in mind the definition in the Administrative Procedure Act, 5 U. S.C. § 701, where Congress is specifically excluded. To be sure, a number of the considerations urged in favor of the amendments, such as the inconvenience of suit in the District of Columbia to citizens of remote states,[9] the desirability of spreading the burden of such litigation among the district courts, and the availability of the local United States Attorney as counsel for the defendants, are also applicable to suits against legislators or their employees. But other considerations differ. In sharp contrast to land disputes, the paradigm of the 1962 legislation, where the determination is generally made in the field, and to many other administrative and executive actions, Congressional committees operate predominantly in the capital, as is the case with the investigation here.[10] The disruption to the work of Congress by the pendency of actions elsewhere than in Washington could be far more serious than in the case of the executive departments and agencies with their large staffs. In any event, whatever policy may ultimately commend itself, if there is a word in the five year gestation period of § 1391(e) to suggest that Congress thought it was changing the law not merely with respect to the executive branch but also concerning itself, its officers and its employees, plaintiffs have not called our attention to it and our own research has not found it.
 
 
 14
 We see no reason to reach a different result on the basis that plaintiffs might elect to drop the Senators as defendants and proceed solely against Mr. Sourwine as an "employee of the United States." In contrast to Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377 (1881), Dombrowski v. Eastland, 387 U. S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967), and Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), the complaint and the moving affidavit are barren of allegations of acts on the part of this Congressional employee. Senate Resolution 366 places power to issue subpoenas in the chairman of the Committee on the Judiciary or of the Subcommittee, and the subpoenas here were signed by Senator Eastland as chairman of both. While it may be surmised that the Senator did not himself prepare them, there is nothing to suggest that Mr. Sourwine did, and there is equally nothing to indicate that he has any role to play in their enforcement. However, we prefer to rest our decision on the broader ground that although Mr. Sourwine is undoubtedly an employee of the United States for some purposes, see 5 U.S.C. § 2105, Congressional employees are no more within the intendment of 28 U.S.C. § 1391(e) than the members themselves.
 
 
 15
 The order dismissing the complaint against the Senators and Mr. Sourwine is affirmed. In order to permit plaintiffs to bring suit in the District of Columbia, we will continue the temporary restraining order until the issuance of the mandate.
 
 
 
 Notes:
 
 
 [1]
 The moving affidavit of plaintiffs' attorney added nothing to the complaint except to amplify plaintiffs' fear "that these subpoenas are meant to gather preliminary information as to the identities of contributors and subcontractors in order that they in turn be subpoenaed before the Committee to be intimidated and reviled in the traditional manner."
 
 
 [2]
 Although expressing doubt whether plaintiffs had satisfied the requirement of jurisdictional amount, 28 U.S.C. § 1331(a), and noting that they had failed to comply with the provisions of § 1391 (e) with respect to service of the summons and complaint, the judge considered these defects might be curable, and rested dismissal on the ground that 28 U.S.C. § 1391(e) was inapplicable
 
 
 [3]
 Plaintiffs never had the bank served with process, and it did not appear voluntarily
 
 
 [4]
 Arguably venue may have been proper, quite apart from § 1391(e), under the 1966 amendment of § 1391(b) permitting a general federal question action to be brought in the district "in which the claim arose." This would require decision whether the claim "arose" in the District of Columbia where the subpoenas were prepared and mailed and the records were to be produced or in the Southern District of New York where the subpoenas were received and the records were kept — or perhaps in both
 
 
 [5]
 We are in accord with decisions such as Powelton Civic Home Owners Ass'n v. Department of Housing and Urban Development, 284 F.Supp. 809 (E.D.Pa. 1968), and Brotherhood of Locomotive Engineers v. Denver & R. G. W. R. R., 290 F.Supp. 612 (D.Colo.1968), aff'd on other grounds, 411 F.2d 1115 (10 Cir. 1969), which have held that the statutory requirement that "each defendant" be a Government official refers only to those defendants as to whom plaintiffs seek to justify venue and personal jurisdiction under § 1391(e)
 
 
 [6]
 The history of the 1962 legislation is recounted in Byse and Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and Nonstatutory Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308 (1967)
 
 
 [7]
 Letter of Deputy Attorney General Walsh in H.R.Rep.No.1936, 86th Cong. 2d Sess. 5-6 (1960)
 
 
 [8]
 Sen.Rep.No.1992, 87th Cong. 2d Sess., reprinted in 2 U.S.Code Cong. & Adm. News, pp. 2784, 2785 (1962)
 
 
 [9]
 Plaintiffs say there is more than inconvenience here since the District of Columbia court would have no personal jurisdiction over Chemical. However, there is no reason to suppose that Chemical would deliver plaintiffs' records if the District of Columbia court were to grant injunctive relief with respect to the subpoenas
 
 
 [10]
 Our decision does not touch the case where a Congressional committee or subcommittee is holding hearings locally and process is served upon a member or an employee seeking to enforce a subpoena. The venue objection that led to dismissal in Fischler v. McCarthy, 117 F.Supp. 643 (S.D.N.Y.), aff'd, 218 F.2d 164 (2 Cir. 1954), has probably been removed by the 1963 amendment to § 1391(b), see fn. 4supra. If the member is immune from suit because of the Speech and Debate Clause, an action might be brought against an employee who was taking steps to enforce the subpoena. See the discussion at the end of this opinion.