VAN GRAAFEILAND, Circuit Judge:
 

 Lifetime Communities, Inc., the successor by merger to the rights and obligations of Fidelity Mortgage Investors, a rehabilitated Chapter XI debtor, appeals from an order of the United States District Court for the Southern District of New York, 16 B.R. 477, Duffy, J., which affirmed an order of the bankruptcy court, Babitt, J. Judge Babitt’s order had denied Lifetime’s application for a reduction in fees totaling $1.65 million, which Lifetime is required to pay to the Referees’ Salary and Expense Fund pursuant to section 40c(2)(b) of the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544,
 
 as amended by
 
 Referees’ Salary Act of 1946, ch. 512, 60 Stat. 323, 327 (repealed 1978). In seeking to avoid payment of this substantial amount, appellant argues that the promulgation of the fee schedule did not comply with the rulemaking provisions of the Administrative Procedure Act, ch. 324, 60 Stat. 237 (1946),
 
 recodified by
 
 Act of September 6, 1966, Pub.L.No.89-554, 80 Stat. 378, 381-88, 5 U.S.C. §§ 551-59, and that the fee was so unexpectedly large as to be inequita
 
 *37
 
 ble. For the reasons hereafter discussed, we affirm.
 

 Beginning with the short-lived Bankruptcy Act of 1800, ch. 19, 2 Stat. 19 (repealed 1803), and up to the Bankruptcy Act of 1978, Pub.L.No.95-598, 92 Stat. 2549 (codified at 11 U.S.C. §§ 101-1330) district judges were assigned the task of appointing bankruptcy referees or their counterparts. The 1898 Bankruptcy Act as originally enacted provided that “[s]uch number of referees shall be appointed as may be necessary to assist in expeditiously transacting the bankruptcy business pending in the various courts of bankruptcy.” § 37, 30 Stat. at 555. However, nothing in the 1898 Act prescribed how the determination of necessity was to be made. This lack was remedied with the enactment of the Referees’ Salary Act of 1946, ch. 512, 60 Stat. 323 (repealed 1978). That Act provided that the Director of the Administrative Office of the United States Courts, after making appropriate local and national surveys of pertinent conditions, should recommend to the district judges, the various circuit councils and the Judicial Conference the number of referees to be approved and the territory which each should serve.
 
 Id.
 
 § 37b(l), 60 Stat. at 325. The district judges were directed to make recommendations thereafter to their respective circuit councils, which in turn would make recommendations to the Judicial Conference.
 
 Id.
 
 “[I]n the light of the recommendations of the Director and of the councils”, the Conference was to determine the number of referees to be appointed and the territories they were to serve.
 
 Id.
 

 The primary aim of the Referees’ Salary Act, was the replacement of the then-existing fee system for compensating referees with a salary system. S.Rep.No. 959, 79th Cong., 2d Sess. 2,
 
 reprinted in
 
 1946 U.S.Code Cong. Service 1231, 1232. The method prescribed for fixing referees’ salaries was the same as that used in determining the need for referees. The Administrator reported to the district judges, the circuit councils, and the Judicial Conference. The district judges advised the councils, the councils made recommendations to the Judicial Conference and “in the light of the recommendations of the councils”, the Conference determined the salaries. Referees’ Salary Act § 37b(1), 60 Stat. at 325 & § 40c(2), 60 Stat. at 327.
 

 In relieving referees of the responsibility of financing their individual offices, Congress did not abandon the concept of a self-supporting bankruptcy system. S.Rep. No.959,
 
 supra,
 
 at 5-6,
 
 reprinted in
 
 1946 U.S.Code Cong. Service at 1235-36;
 
 United States v. Kras,
 
 409 U.S. 434, 448, 93 S.Ct. 631, 639, 34 L.Ed.2d 626 (1973). Instead, Congress provided that there should be a filing fee, plus additional fees based in substance upon the size of the estate,
 
 Mesa Farm Co. v. United States,
 
 475 F.2d 1004, 1007-08 (9th Cir. 1973). The additional fees were to be fixed in such a manner that the total annual fees collected would approximate the total amount of the referees’ annual salaries and expenditures. Referees’ Salary Act § 40e(2), 60 Stat. at 327;
 
 United States
 
 v.
 
 Nickerson & Nickerson, Inc.,
 
 530 F.2d 811, 814 n.5 (8th Cir. 1976). Congress provided that the same procedure should be followed in determining the schedule of additional fees as was followed in fixing referees’ salaries. Referees’ Salary Act § 37b(l), 60 Stat. at 325. In order, however, that the total of salaries and fees would be kept in approximate balance, the Administrator was authorized to make limited revisions in the fee schedule once a year with the approval of the Conference.
 
 Id.
 
 § 40c(2), 60 Stat. at 327.
 

 In thus empowering the Judicial Conference to set bankruptcy fees, Congress was following the precedent it had set with regard to Court of Appeals fees, Act of September 27, 1944, ch. 413, 58 Stat. 743 (codified as amended at 28 U.S.C. § 1913) and district court fees, Act of September 27, 1944, ch. 414, § 8, 58 Stat. 743, 744 (codified as amended at 28 U.S.C. § 1914(b)). Moreover, enactment of the Referees’ Salary Act on June 27, 1946 followed by only sixteen days the enactment of the original Administrative Procedure Act, which took place on June 11,1946. In
 
 *38
 
 view of the lockstep manner in which these two statutes came into being, Congress must have been acutely aware of the rule-making provisions of the Administrative Procedure Act when it passed the Referees’ Salary Act. By providing in the latter Act that the Judicial Conference should determine the schedules of graduated additional fees in asset, management and wage-earning cases “in the light of the recommendations of the Director and of the councils,” Congress made clear its intent that the rulemaking provisions of the Administrative Procedure Act were not applicable to the Judicial Conference.
 
 See Gullung v. Humble Oil & Refining Co.,
 
 210 F.Supp. 292, 293 (E.D.La.1962).
 

 A ready explanation for this may be found in the legislative history of the Administrative Procedure Act.
 
 See Administrative Procedure Act, Legislative History 79th Cong.,
 
 1944-46, S.Doc.No.248, 79th Cong., 2d Sess. (1946) [hereinafter cited as
 
 Legislative
 
 History]. The Senate Judiciary Committee Print of June 1945,
 
 reprinted in Legislative History, supra,
 
 at 11-44, contains explanations of various provisions in the Act, including section 2(a) which defines “agency”. The Committee stated that the term “agency” is defined substantially as in the Federal Reports Act of 1942, ch. 811, 56 Stat. 1079, and the Federal Register Act, ch. 417, 49 Stat. 500 (1935).
 
 Legislative History, supra,
 
 at 12.
 

 Section 7(a) of the Federal Reports Act, 56 Stat. at 1079-80 (current version at 44 U.S.C. § 3502), defines “Federal agency” as “any executive department, commission, independent establishment, corporation owned or controlled by the United States, board, bureau, division, service, .office, authority, or administration in the executive branch of the Government .... ”
 

 Section 4 of the Federal Register Act, 49 Stat. at 501 (current version at 44 U.S.C. § 1501), defines “agency” as “any executive department, independent board, establishment, bureau, agency, institution, commission, or separate office of the administrative branch of the Government of the United States but not the legislative or judicial branches of the Government .... ”
 

 The Senate Judiciary Committee’s Report on the Administrative Procedure Act, S.Rep.No.752, 79th Cong., 1st Sess. 10 (1945),
 
 reprinted in Legislative History, supra,
 
 at 185, 196, states that the word “agency” is defined in the Act “by excluding legislative, judicial, and territorial authorities.”
 
 Id.
 
 at 196.
 

 If legislative history has any significance at all, it is clear that Congress intended the entire judicial branch of the Government to be excluded from the provisions of the Administrative Procedure Act.
 
 Wacker v. Bisson,
 
 348 F.2d 602, 608 n.18 (5th Cir. 1965).
 

 It is little wonder, then, that the Judicial Conference, with its membership of judges only, has never followed the rulemaking provisions of the Administrative Procedure Act in determining fees. Neither is it surprising that nobody heretofore has challenged the Conference’s well-established and well-known practice. Disgruntled debtors and creditors have not been reluctant to attack fee schedules on other grounds. See,
 
 e.g., United States v. Kras, supra,
 
 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973);
 
 Mesa Farm Co. v. United States, supra,
 
 475 F.2d 1004 (9th Cir. 1973);
 
 American Guaranty Corp. v. Burton,
 
 380 F.2d 789 (1st Cir. 1967);
 
 American Guaranty Corp. v. United States,
 
 401 F.2d 1004, 185 Ct.Cl. 502 (1968). In view of the Conference’s long-established practice, we deem it significant that, in section 1930 of the 1978 Bankruptcy Act, 28 U.S.C. § 1930, Congress reinvested the Conference with the power to set fees in Chapter XI cases without mandating any changes in the Conference’s method of procedure.
 

 The word “court” like any other word, “may vary greatly in color and content according to the circumstances and the time in which it is used.”
 
 See Towne v. Eisner,
 
 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918). The term is often employed in statutes otherwise than in its strict technical sense.
 
 Black’s Law Dictionary
 
 425 (rev. 4th ed. 1968). We believe that
 
 *39
 
 when, as here, the Judicial Conference is acting in effect as an auxiliary of the courts, it falls within the definition of “court” as that term is used in the Administrative Procedure Act.
 
 See Warth v. Department of Justice,
 
 595 F.2d 521, 523 (9th Cir. 1979);
 
 Pickus v. United States Board of Parole,
 
 165 U.S.App.D.C. 284, 507 F.2d 1107, 1112 (D.C.Cir.1974);
 
 Cook v. Willingham,
 
 400 F.2d 885, 885-86 (10th Cir. 1968) (per curiam).
 

 One need only examine the annual reports of the Conference to appreciate how integrated its functions are with those of the courts. According to the
 
 1981 Reports of the Proceedings of the Judicial Conference of the United States,
 
 the Conference during that year considered, among other things, the transcript rates of court reporters, the closing of court facilities, the places for holding court, the allotment of court space, the disposition of court records, the assignment of court reporters, the assignment and salaries of magistrates, miscellaneous fee schedules, and judicial ethics.
 

 Although the Conference was performing an administrative function when it set the bankruptcy fees now being challenged, this is not dispositive of the issue before us. When a judge sets fees, he, too, is performing an administrative function.
 
 In re India Wharf Brewery, Inc.,
 
 96 F.2d 710, 712 (2d Cir. 1938);
 
 2A Collier on Bankruptcy,
 
 ¶ 39.18, at 1491 (14th ed. 1980). The Conference is performing a task which otherwise might be left to the courts.
 
 Ex parte Peterson,
 
 253 U.S. 300, 315, 40 S.Ct. 543, 548, 64 L.Ed. 919 (1920). Dicta in
 
 Chandler v. Judicial Council of the Tenth Circuit,
 
 398 U.S. 74, 85 n.6, 86 n.7, 88 n.10, 90 S.Ct. 1648, 1654 n.6, 1654 n.7, 1655 n.10, 26 L.Ed.2d 100 (1970), do not compel a contrary holding. In that case, the Court was considering whether it had original jurisdiction to issue a writ of mandamus or prohibition against an administrative order of the Judicial Council. It denied the petition on other grounds without deciding the jurisdictional issue. We have no problem with jurisdiction in the instant case.
 
 See American Guaranty Corp. v. United States, supra,
 
 401 F.2d at 1009-11.
 

 The definition of “agency” in 5 U.S.C. § 551 is identical with that in 5 U.S.C. § 701. The term “agency” also appears in 28 U.S.C. § 1391(e), which enlarges the venue of actions brought against an officer, employee, or agency of the United States. In
 
 Liberation News Service v. Eastland,
 
 426 F.2d 1379 (2d Cir. 1970), this Court was called upon to consider whether section 1391(e) was applicable to ten members of the Senate Committee on the Judiciary. Judge Friendly, writing for the Court, looked to the definition of “agency” as contained in 5 U.S.C. § 701 and concluded that section 1391(e) applied only to the executive branch of the Government. 426 F.2d at 1384.
 

 The applicability of section 1391(e) to the Judicial Conference was before the Court of Appeals for the Fifth Circuit in
 
 Duplantier v. United States,
 
 606 F.2d 654 (5th Cir. 1979),
 
 cert. denied,
 
 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981). Plaintiffs in that action were challenging that portion of the Ethics in Government Act of 1978, 28 U.S.C. app. §§ 301-09 (Supp.1982), which requires federal judges to file financial statements. Pursuant to the provisions of the Act, 28 U.S.C. app. § 303, the Judicial Conference established a Judicial Ethics Committee, whose duty it was in substance to prepare the necessary forms and to monitor compliance with the Act. The Court, citing
 
 Liberation News Service v. Eastland, supra,
 
 426 F.2d 1379, affirmed the district court’s dismissal of the complaint against the Judicial Ethics Committee and its chairman on the ground that the Committee was part of the judicial branch of the Government performing a judicial administrative function. 606 F.2d at 663-64.
 
 See also Seltzer v. Foley,
 
 502 F.Supp. 600, 602 n.2 (S.D.N.Y.1980).
 

 We are satisfied from the foregoing review that the fees of which appellant complains were fixed lawfully and must be collected. Section 40c(2) of the Referees’ Salary Act provides that “[additional fees for the referees’ salary and expense fund
 
 shall
 
 be charged in accordance with the
 
 *40
 
 schedule fixed by the conference.” (emphasis supplied). The plain language of this section permits of no judicially created exception.
 
 See Central Trust Co. v. Official Creditors’ Committee of Geiger Enterprises,
 
 Inc., - U.S. -, -, 102 S.Ct. 695, 696-97, 70 L.Ed.2d 542 (1982). The bankruptcy court’s equity jurisdiction did not empower it to go beyond the prescribed limits of the Act.
 
 In re United Merchants and Manufacturers, Inc.,
 
 597 F.2d 348, 349 (2d Cir. 1979);
 
 Borgenicht v. Creditors’ Committee,
 
 479 F.2d 150, 153 (2d Cir. 1973);
 
 Guerin v. Weil, Gotshal & Manges,
 
 205 F.2d 302, 304-05 (2d Cir. 1953);
 
 In re FAS International, Inc.,
 
 382 F.Supp. 77, 79-81 (S.D.N.Y.1974),
 
 aff’d. per curiam,
 
 511 F.2d 1164 (2d Cir.),
 
 cert. denied,
 
 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975).
 

 Section 403(e) of the 1978 Act, which limits the amount of fees to $100,000, applies only to those cases in which a plan is confirmed after September 30, 1978. The Act makes no changes in the mandatory contributions that must be made in cases like the instant one where confirmation took place prior to September 30. Bearing in mind that the fees prescribed in the Referees’ Salary Act were intended to be applied towards payment of the bankruptcy court’s general administration expenses rather than those of the charged estate,
 
 Reconstruction Finance Corp.
 
 v.
 
 Cohen,
 
 179 F.2d 773, 776 (10th Cir. 1950), and that the debtor herein was fully aware of the purpose and contents of the fee schedule when it voluntarily sought Chapter XI relief, we conclude that the bankruptcy court did not err in holding the debtor to the precise terms of the schedule.
 

 Finding appellant’s remaining arguments to be without merit,
 
 [1]
 
 we affirm.
 

 [1]
 

 . During 1981, the Judicial Conference denied requests from three debtors, including, we understand, the appellant herein, for reduction or cancellation of fees for the Referees’ Salary and Expense Fund.
 
 See Reports of the Proceedings of the Judicial Conference of the United States, supra,
 
 at 35.