**NOVELL, INC., et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. CIV. 00–1400(EGS).**

United States District Court, District of Columbia.

July 26, 2000.

David M. Nadler, Dickstein, Shapiro, Morin & Oshinsky, Washington, DC.

David Smorodin, Assistant United States Attorney, Washington, DC.

Thomas P. Humphrey, Crowell & Moring, Washington, DC.

***MEMORANDUM OPINION***

SULLIVAN, District Judge.

**I. Introduction**

This action arises out of a solicitation by the Administrative Office of the United States Courts ("AOUSC") for a new electronic mail system for the federal judiciary. Plaintiffs Novell Inc. and Software

Spectrum, Inc. ("plaintiffs") bring this action for a permanent injunction and declaratory judgment against the United States of America, the United States Attorney for the District of Columbia and the Director and Contracting Officer of the AOUSC ("defendants"), alleging that defendants improperly evaluated competing bids by plaintiffs and a competitor, Lotus Development Corporation and ASAP Software Express, Inc. ("Lotus"). Lotus, which was eventually awarded the contract, has joined this lawsuit as an intervenor-defendant. Defendants have filed a motion to dismiss, alleging that this Court has no subject matter jurisdiction to review a procurement decision of the AOUSC. Upon consideration of the motion to dismiss, the responses thereto, the arguments in open court at the July 7, 2000 hearing, and for the following reasons, defendants' motion to dismiss [13–1] is GRANTED.

## II. Procedural Background

On May 24, 1999, the AOUSC issued a solicitation for proposals for a new e-mail software system and related training and technical support. *See* Complaint ¶ 20. Plaintiffs submitted a bid, as did intervenor-defendant Lotus. On December 22, 1999, defendants notified plaintiffs that the contract had been awarded to Lotus. *See* Defendant's Motion to Dismiss at 2. On February 8, 2000, plaintiffs filed suit in the Court of Federal Claims ("COFC"), alleging improprieties in the evaluation and subsequent award of the e-mail contract. The COFC dismissed the suit without prejudice on April 28, 2000, finding that it had no subject matter jurisdiction to hear the complaint under 28 U.S.C. § 1491(b), the statute that extended jurisdiction for post-award bid protests to the Court of Federal Claims. *Novell Inc. v. United States*, 46 Fed. Cl. 601, 2000 WL 558645, 2000 U.S. Claims LEXIS 86 (2000). On June 13, 2000, plaintiffs filed this complaint in U.S. District Court for the District of Columbia, challenging the same procurement action under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

("APA"). Defendants filed a motion to dismiss, which is joined by intervenor-defendant Lotus.

## III. Government Motion To Dismiss

Defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), and they make a two-pronged argument for dismissal. First, defendants argue that the district courts' APA jurisdiction to review government bid protests was subsumed by the provisions of the 1996 Administrative Dispute Resolution Act ("ADRA"), codified at 28 U.S.C. § 1491(b) ("Section 1491(b)"). Since the COFC has already ruled that the AOUSC is not an "agency" for purposes of Section 1491(b), defendants contend that the issue is settled in this case under the doctrine of *res judicata*. Alternately, if some independent APA jurisdiction for government bid protests survived the passage of ADRA, defendants argue that the AOUSC is exempt from such review under that statute's exclusion for the "courts."

### *Res Judicata*

In 1996, Congress passed the Administrative Dispute Resolution Act ("ADRA"), Pub.L. No. 104–320, § 12, 110 Stat. 3874–75 (1996). Prior to enactment of this statute, the COFC could hear challenges to ongoing procurements, however, any protest regarding an actual contract award had to be brought in district court under the APA. ADRA changed that by allowing the COFC to hear post-award as well as pre-award bid disputes pursuant to the new language of Section 1491(b). Section 1491(b) gave the two courts concurrent jurisdiction over such governmental bid protests, but provided that the district courts' authority to hear such cases would expire on January 1, 2001 unless Congress acted to extend it. At that time, the COFC would have exclusive jurisdiction over these bid protest cases. *See* Fed. Def.'s Mot. to Dismiss at 9.

Plaintiffs invoked Section 1491(b) when they brought their original challenge to

the Lotus bid award in the Court of Federal Claims (COFC). However, the COFC dismissed that suit without prejudice on the grounds that there was no subject matter jurisdiction under 28 U.S.C. § 1491(b). Specifically, the court held that the AOUSC was not an "agency" under this statute. *See Novell,* 46 Fed. Cl. 601, 614. Defendants contend that this holding is *res judicata* in this case because the jurisdictional parameters of the district court and COFC are identical under Section 1491(b).

■■■■ The doctrine of *res judicata* "provides that when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy....'" *Nevada v. United States,* 463 U.S. 110, 129, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983)(citing *Cromwell v. Sac County,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876)). This Circuit has held that *res judicata* applies to dismissal for lack of jurisdiction as well as other grounds. *See Dozier v. Ford Motor Company,* 702 F.2d 1189, 1191 (D.C.Cir.1983). Although the earlier dismissal was in the COFC rather than another district court, this distinction should not matter if, as defendants contend, jurisdiction is coextensive under Section 1491(b).

Plaintiffs appear not to dispute that *res judicata* would apply if, as defendants contend, the district courts and the COFC exercise identical jurisdiction over government bid protests. However, plaintiffs contend that jurisdiction is *not* identical in

both courts. Rather, plaintiffs argue that district courts have distinct, preexisting jurisdiction under the so-called *Scanwell* doctrine. This term is a reference to *Scanwell Laboratories Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970), in which the D.C. Circuit upheld judicial review of procurement awards under the APA. Plaintiffs argue that Section 1491(b) did not displace this pre-existing jurisdictional authority, although ADRA does mean that the *Scanwell* jurisdiction will expire in 2001 unless there is further Congressional action to retain it.[1] Plaintiffs have alleged APA jurisdiction for this action, while Section 1491(b) was the basis for jurisdiction pled in the earlier lawsuit before the COFC.

Unfortunately for plaintiffs, however, this Court agrees with defendants that there no longer is such an independent, APA-based jurisdiction for the district courts in government bid protest cases; rather, Congress effectively subsumed APA jurisdiction of the district courts into the more specific jurisdictional language of ADRA. *See* Fed. Def.'s Mot. to Dismiss at 6–7. The statute authorizes jurisdiction for both courts without making any distinction between the two courts.[2] *See* 28 U.S.C. § 1491(b). The law also specifies that both courts shall review agency actions under the "arbitrary and capricious" standard of the APA. *See* 28 U.S.C. § 1491(b)(4) (stating that courts shall review actions under the law pursuant to "the standards set forth in section 706 of

---

1. Plaintiff cites a number of cases from this circuit applying APA jurisdictional standards to government bid protests arising after the passage of ADRA. *See* Pl.'s Opp'n. to Def.'s Mot. to Dismiss at 12–16. This Court is not persuaded that these cases resolve the issue whether or not district courts' *Scanwell* jurisdiction was overtaken by the provisions of Section 1491(b), since there is no indication that this question was ever addressed in those cases.

2. The primary language is found at 28 U.S.C. § 1491(b)(1), which states:
   Both the United States Court of Federal Claims and the district courts of the United

States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether it is instituted before or after the contract is awarded.

title 5.") The selection of the APA standard of review adds credence to the argument that lawmakers believed they were codifying the *Scanwell* jurisdiction with the enactment of Section 1491(b).[3] More importantly, and as plaintiffs concede, the 1996 statute includes a sunset provision that will terminate district court jurisdiction over bid protest actions as of 2001. *See* Pub.L. No. 104–320, § 12(d), 110 Stat. at 3875. Since the sunset provision terminates actions under Section 1491(b)(1) and makes no mention of terminating *Scanwell* jurisdiction, it would defeat the purpose of the sunset clause if these cases could still be brought in district court under the APA. *See* Intervenor–Def.'s Reply in Supp. of Mot. to Dismiss at 14; *see also Brown v. General Services Admin.*, 425 U.S. 820, 834, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (noting that "[i]n a variety of contexts, the Court has held that a precisely drawn, detailed statute pre-empts more general remedies.")

Therefore, this Court is persuaded that ADRA created identical jurisdiction for the two courts and, in the process, subsumed the district courts' previous *Scanwell* jurisdiction over such cases. Accordingly, the Court holds that the determination of the COFC that the Administrative Office is not an "agency" for purposes of Section 1491(b) is *res judicata* in this case, and this matter is DISMISSED for lack of subject matter jurisdiction.

**APA exclusion**

█ Nevertheless, should doubts persist as to whether Congress did in fact subsume *Scanwell* jurisdiction into the provisions of the ADRA, the Court also concludes that it has no subject matter jurisdiction to hear a complaint against the AOUSC. Specifically, the "courts" are excluded from the terms of the APA, and this exclusion extends to the judicial branch generally. *See In re Fidelity Mortgage Investors*, 690 F.2d 35 (2nd Cir. 1982); *Wacker v. Bisson*, 348 F.2d 602, 608 n. 18 (5th Cir.1965).

*Fidelity* analyzed the legislative history of the APA, noting that the term "agency" was defined in keeping with the definition of "agency" in two earlier statutes which excluded the judicial branch. *Fidelity*, 690 F.2d at 38. The court concluded that "[i]f legislative history has any significance at all, it is clear that Congress intended the entire judicial branch of the Government to be excluded from the provisions of the Administrative Procedure Act." *Id.* (citing *Wacker v. Bisson*, 348 F.2d 602 (5th Cir. 1965)). Although the *Fidelity* case involved the Judicial Conference rather than the Administrative Office, the Second Circuit's language regarding the "entire judicial branch" appears to encompass the AOUSC as well.[4]

In *Tashima v. Administrative Office of the United States Courts*, 719 F.Supp. 881 (C.D.Ca.1989), a district court concluded that the AOUSC is not subject to APA jurisdiction because it is not an agency under that statute. *Tashima* relied on the legislative history analysis in *Fidelity* and *Wacker*. The decision was affirmed by the Ninth Circuit on other grounds, *Tashima v. Administrative Office of the United States Courts*, 967 F.2d 1264, in an opinion that did not address the APA issue.

In addition to this caselaw, defendants cite portions of the legislative history of the APA indicating that "agency" is defined by excluding "legislative, judicial and territorial authorities." *See* Def.'s Reply at 5, citing *Administrative Procedure Act: Legislative History*, 79th Cong., 1944–46, S. Doc. 248, 2nd Sess. (1946), at 196, 259.

---

**3.** *See Information Sys. v. U.S. Dept. Health & Human Ser.*, 970 F.Supp. 1, 7 n. 8 (D.D.C. 1997).

**4.** Plaintiff attempts to distinguish *Wacker* and *Fidelity* by arguing that their reasoning and holdings apply only to groups comprised of Article III judges or performing judicial, rather than administrative, functions. However, there is no such limiting language in the opinions.

Plaintiffs, however, argue that this "courts" exclusion should not and does not encompass the Administrative Office, which is purely an administrative body. Plaintiffs chiefly rely on *Goldhaber v. Foley*, 519 F.Supp. 466 (E.D.Pa. 1981), a procurement case involving the AOUSC. That case involved a challenge to the AOUSC's decisions regarding a court reporting contract. Defendants argued that the court had no subject matter jurisdiction under the APA to hear the complaint. The court disagreed, noting that "the functions of the A.O. are much more akin to those of an administrative or executive agency than to those of the courts." *Goldhaber*, 519 F.Supp. at 480. The court also found it significant that Congress sometimes exempts the "judicial branch" from a given statute, rather than the "courts"— the language used in the exclusion under the A.P.A. "The A.O.'s argument would render the distinction between the courts and the judicial branch meaningless," the *Goldhaber* court wrote. "In light of this, we cannot conclude that Congress intended to exclude the A.O. from the extraordinarily broad ambit of the APA." *Id.* at 480–1.

*Goldhaber* also relies on policy arguments, stating that "as an arm of the judiciary, the A.O. should be accountable to the judiciary when it abuses its discretion." *Id.* at 481. While the Judicial Conference may oversee the policies adopted by the Administrative Office, the court concluded that "the administration of these policies is not, indeed cannot be, effectively overseen by the Judicial Conference."

While these arguments suggest that it might be appropriate for Congress to subject the AOUSC to review under the APA, they do not contradict the legislative history and judicial precedent indicating that Congress has not yet chosen to do so. This Court agrees with the analysis of the *Tashima* trial court, which specifically rejected *Goldhaber's* reasoning, noting that it ignored the legislative history of the APA. This Circuit likewise has come close to endorsing the contention that the APA excludes the entire judicial branch from its definition of "agency." *See Washington Legal Foundation v. U.S. Sentencing Commission*, 17 F.3d 1446 (D.C.Cir.1994). Although the court in *Washington Legal Foundation* ultimately did not reach the issue of whether the APA excludes the entire judicial branch,[5] it discussed the legislative history of the APA at length and noted that "virtually every case interpreting the APA exemption for 'the courts of the United States' has held that the exemption applies to the entire judicial branch—at least to entities within the judicial branch that perform functions that would otherwise be performed by the courts." *Washington Legal Found.*, 17 F.3d at 1449. Among the cases cited in that discussion is *Pickus v. United States Board of Parole*, 507 F.2d 1107 (D.C.Cir. 1974), in which the court noted that the federal probation service was exempt from the APA not by virtue of its functions, "but by its status as an auxiliary of the courts, which, unlike agencies of the executive branch, are specifically excluded." *Pickus*, 507 F.2d at 1112.

Defendant also offers some reasons why, even as a matter of policy, it might be inappropriate to subject the AOUSC to review under the APA. While primarily an administrative body, the AOUSC is nonetheless supervised by judges serving on the Judicial Conference, and its activities are necessarily interwoven with those of the judiciary. Even the decision about the procurement at issue in this case was the product of judges, serving on committees, as well as staff at the AOUSC. (Fed. Def.'s Reply at 8)

Furthermore, as defendants point out, procurements by the AOUSC are apparently subject to independent review by the

---

**5.** The trial court did conclude, on the basis of legislative history, that the entire judicial branch is exempt from the APA. *See Wash.*

*Legal Found. v. U.S. Sentencing Comm'n*, 826 F.Supp. 10, 13 (D.D.C.1993).

General Accounting Office pursuant to 31 U.S.C. § 3551 *et seq.*[6] See Def.'s Mot. to Dismiss at 11, n. 7; Pl.'s Opp'n. to Mot. to Dismiss at 36.

Plaintiffs correctly state that this process is different than obtaining judicial review under the APA, however its existence does indicate that Congress has provided some oversight for procurement practices of the AOUSC.

### Conclusion

Accordingly, for the reasons stated, this Court is without subject matter jurisdiction to resolve this complaint and the matter is DISMISSED WITHOUT PREJUDICE. An appropriate order will accompany this opinion.

---

**6.** Plaintiffs argue that because the GAO has authority to review AOUSC procurements under 31 U.S.C. § 3551, there must be some district court jurisdiction to review these decisions as well. *See* Pl.'s Opp. to Mot. to Dismiss at 35–37. Although there are some instances where courts have looked to GAO definitions, this Court agrees with defendants that there is no reason in this case to look outside the APA's own definition of agency.